**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

KENNETH PAUL YORK,

              Petitioner-Appellant,

v.

CLARK E. DUCART, Warden,

              Respondent-Appellee.

No.   16-15060

D.C. No. 3:15-cv-01521-EMC

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted November 15, 2017
San Francisco, California

Before: BERZON and FRIEDLAND, Circuit Judges, and SESSIONS,[**] District
Judge.

      Kenneth York was convicted of first-degree murder for the killing of

Michael "Merlin" Fidler during a burglary. He seeks a writ of habeas corpus on

---

     [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

     [**]    The Honorable William K. Sessions III, United States District Judge
for the District of Vermont, sitting by designation.

the basis of ineffective assistance of counsel (IAC).  *See Strickland v. Washington*,

466 U.S. 668 (1984); 28 U.S.C. § 2254(d).

**1.**  The performance of York's trial counsel was deficient.  *See Strickland*,

466 U.S. at 687.  His failure to review the prosecution's evidence, and in turn to

introduce cell phone records that would have severely undermined the testimony of

the state's key witness, fell "below an objective standard of reasonableness" and

"outside the wide range of professionally competent assistance."  *Id.* at 688, 690.

The California Supreme Court's conclusion otherwise was "contrary to, or

involved an unreasonable application of, clearly established Federal law."  28

U.S.C. § 2254(d)(1).[1]

The cell phone records are significantly exculpatory.  They contradict the

testimony of Junior Perez, the prosecution's main witness linking York to the

crime.  Perez provided a full before-and-after timeline of York's supposed

involvement in the shooting, and was the only witness who provided direct,

---

[1] The California Supreme Court denied York's petition for post-conviction relief without opinion, so we look to "what arguments or theories supported or, as here, could have supported," its decision.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

firsthand testimony of York's actions the night of the crime.[2]  The phone records

would strongly support a finding that York did not call Perez at 3 a.m. the morning

of the crime, as Perez testified.[3]  At the same time, they undercut Perez's alibi and

raise questions of how he came to be in possession of a duffel bag containing

incriminating evidence.  Had they been introduced, the records would have

bolstered the defense's theory that Perez—not York—was the second intruder,

even if York was otherwise involved.[4]

---

[2] Perez testified that York met and exchanged telephone numbers with Tyson Morehead, who participated in the crime but has never been apprehended, the afternoon before the burglary, after York had discussed robbing a drug dealer; called Perez as he was staking out Fidler's apartment complex several hours later; called Perez over to his house at 3 a.m., told him that "shit went bad," and gave him a duffel bag full of clothing that York later burned; and told him again later in private that "[s]hit went bad and the guy got shot."

[3] While not conclusive proof that York did not call Perez at 3 a.m., the records—together with Perez's trial testimony and other statements he made to detectives—are weighty evidence that no such phone call was made.  Perez told police that he and York communicated exclusively by cell phone during this time. Perez's testimony that he had missed one or two calls from York before he called him back on the night of the crime, would make no sense unless he received the calls from a number he recognized.  So while it is theoretically possible that York called Perez from a different phone, that scenario runs entirely counter to Perez's own statements in the record.

[4] The record suggests, and York's brief does not dispute, that both Perez and York were involved in the crime or its cover-up to some extent.  Evidence of York's complicity does not, however, foreclose his claim that, but for his counsel's constitutionally significant failure to introduce probative evidence casting doubt upon his guilt, he would not have been convicted of first-degree murder.

The Pleasant Hill police department subpoenaed York's cell phone records from Sprint Nextel, his service provider. At some point before or during trial, the records were turned over to York's counsel, who either did not look at them, or forgot he had them, until after the jury had retired to deliberate. Even then, it seems he did not review them closely enough to grasp their exculpatory value.

Trial counsel's failure to review the evidence obtained by law enforcement, turned over to him by the prosecution, and later located in his *own* case file, was deficient performance. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Counsel's investigation "should always include efforts to secure information in the possession of the prosecution and law enforcement authorities." *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (quoting 1 ABA Standards for Criminal Justice 4-4.1 (2d ed. 1982 Supp.)).[5] Inherent in "secur[ing]" that evidence is the obligation to review it—that is, to "make some

_____

[5] "Prevailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable, but they are only guides." *Strickland*, 466 U.S. at 688. The standards in place during York's trial are substantively identical to those quoted in *Rompilla*. *See Rompilla*, 545 U.S. at 387 n.6; ABA Standards for Criminal Justice, Prosecution Function and Defense Function 4-4.1 (3d ed. 1993).

effort to *learn* the information in the possession of [those] authorities." *Id.* at 387 n.6 (emphasis added).

No conceivable strategic judgment could explain counsel's failure to review the records.[6] The state does not articulate one. Counsel's failure to review the exculpatory cell phone records was thus the result of neither "reasonable investigations" nor "a reasonable decision that ma[de] particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see Rompilla*, 545 U.S. at 387. "The record . . . underscores the unreasonableness of counsel's conduct by suggesting that [his] failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment." *Wiggins v. Smith*, 539 U.S. 510, 526 (2003).

As counsel's incompetence in failing to locate the phone records in the material disclosed by the prosecution is beyond reasonable dispute, the state court's conclusion that York did not show that counsel's performance was deficient under *Strickland* was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).[7]

---

[6] Trial counsel declined to submit an affidavit to habeas counsel explaining his decisions.

[7] Because trial counsel's performance with regard to the cell phone records was deficient, we do not address whether his failure to investigate an alibi defense was also deficient.

**2.** York was prejudiced by trial counsel's failure to review the material disclosed by the government and, in turn, to introduce the phone records at trial. *See Strickland*, 466 U.S. at 692. Had counsel located and introduced them, the phone records would have "alter[ed] the entire evidentiary picture" before the jury, *id.* at 696, resulting in "a reasonable probability that . . . at least one juror would have harbored a reasonable doubt" as to York's guilt. *Buck v. Davis*, 137 S. Ct. 759, 776 (2017).

The phone records would have shown that a key piece of Perez's testimony—the 3 a.m. phone call—quite likely did not happen. Beyond discrediting Perez's testimony, the records would have bolstered the defense's theory that Perez, not York, was the second intruder (along with Tyson Morehead). If no early-morning phone call occurred, and no subsequent meeting with York, the jury would be left to wonder why Perez (and his wife)[8] invented those events, whether he was actually at home and in bed the night of the crime, and how he came to be in possession of a duffel bag full of potentially incriminating evidence if York did not give it to him that night.

---

[8] Lauren Lackey—Perez's wife by the time of trial—also testified about the 3 a.m. phone call, so the phone records would have contradicted her testimony as well.

6

Notably, the significance of potential cell phone records was clear to the jury and the parties. During closing argument, the prosecutor told the jurors, "I wish we had the telephone records to corroborate [Perez's testimony about the phone call.]" The prosecutor also referred to Lackey's testimony, which corroborated Perez's account of the night, as an "alibi" for Perez, and placed special emphasis on the call. One juror sent a note to the judge asking specifically whether "phone records exist which confirm Mr. York called Jr. Perez" on the morning of the crime. In a post-trial motion to the judge, York's lawyer described phone records as "the type of evidence that could push a juror one way or the other."

With Perez's testimony severely undermined by the phone records, the state's case against York would have been "only weakly supported by the record." *Hardy v. Chappell*, 849 F.3d 803, 823 (9th Cir. 2016) (quoting *Strickland*, 466 U.S. at 696). "[N]o physical evidence whatsoever linked [York] to the crime." *Id.* at 824; *see also Cannedy v. Adams*, 706 F.3d 1148, 1164 (9th Cir. 2013). And the evidence in the record was equivocal, secondhand, or subject to convincing rebuttal.

The testimony from the four Nevada City witnesses indicated that York was probably involved in covering up the crime, but pointed no more to his direct participation in the home invasion-murder than to Perez's. Lenny Cabrera gave

7

incriminating evidence about York, but Cabrera's statements to detectives regarding his close relationship with Perez, elicited on cross-examination, deprived his testimony of the weight it might otherwise have had. James Connelly's tentative courtroom identification of York was inconsistent with the suspect description he gave to police the night of the crime, which itself much more closely matched Perez than it did York.[9]

Tesse Perez testified that York essentially confessed his role in the crime to her and provided details about the break-in. But a jury would have to balance this specific testimony against her motive to lie to protect her brother, Junior Perez; her complicated romantic history with York; and the other evidence impeaching her presented by York at trial. The jury might well have viewed her testimony quite skeptically had her brother's and sister-in-law's testimony and credibility been undermined by the cell phone records. "The *Strickland* test is . . . not a sufficiency of the evidence standard nor is it a substantial evidence standard." *Hardy*, 849 F.3d at 824 n.9. "[C]onsider[ing] the totality of the evidence before the judge or jury," *Strickland*, 466 U.S. at 696, and how the phone records would have changed

---

[9] The district court credited the sparse testimony given by Penny Morales, but the statements of York's to which she testified were too vague and lacking in context to be significantly probative of York's involvement in the home invasion-murder.

the evidentiary landscape before them, "there is a reasonable probability that the unpresented evidence would have altered at least one juror's assessment" of York's guilt, *Vega v. Ryan*, 757 F.3d 960, 974 (9th Cir. 2014) (quoting *United States v. Kohring*, 637 F.3d 895, 906 (9th Cir. 2010)).

In short, the phone records would have removed the linchpin of the state's case against York. The California Supreme Court's assessment that York was not prejudiced by this lapse was "an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States" in *Strickland*. 28 U.S.C. § 2254(d)(1). The state's case rested on Junior Perez's testimony; the evidence that trial counsel failed to locate and introduce would have undone that testimony. While there was other testimony in the record supporting York's involvement, all of it was either equivocal or its credibility or reliability was subject to significant challenge. Under those circumstances, no "fairminded jurist could fail to acknowledge at least a reasonable probability of a different outcome." *Cannedy*, 706 F.3d at 1165.

The judgment of the district court is **REVERSED** and the case is **REMANDED** with instructions to grant the writ of habeas corpus.

9