**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EARL EUGENE CANNEDY, JR.,
*Petitioner-Appellee*,

v.

DERRAL G. ADAMS, Warden,
*Respondent-Appellant*.

No. 09-56902

D.C. No.
5:08-cv-01230-
CJC-E

ORDER

Filed July 16, 2013

Before: Andrew J. Kleinfeld, Carlos F. Lucero,[*]
and Susan P. Graber, Circuit Judges.

Order;
Dissent to Order by Judge O'Scannlain

---

[*] The Honorable Carlos F. Lucero, United States Circuit Judge for the Tenth Circuit, sitting by designation.

# SUMMARY[**]

## Habeas Corpus

The panel denied a petition for panel rehearing, denied a petition for rehearing en banc on behalf of the court, and ordered that no further petitions shall be entertained. Judge Kleinfeld would have granted the petition for panel rehearing and rehearing en banc and Judge Lucero made no recommendation as to rehearing en banc.

Judge O'Scannlain, joined by Judges Tallman, Bybee, Callahan, Bea, and Ikuta, dissented from the denial of rehearing en banc. In the underlying opinion, the panel affirmed the district court's grant of a 28 U.S.C. § 2254 habeas corpus petition after an evidentiary hearing, based on ineffective assistance of counsel. Judge O'Scannlain agreed with the majority's conclusion that *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), precludes it from considering any of the evidence adduced during the hearing in federal district court. But he would have heeded the Supreme Court's guidance in *Harrington v. Richter*, 131 S. Ct. 770 (2011), determined whether any argument or theory reasonably could have supported the California Supreme Court's summary denial of post-conviction relief, and reversed the district court's grant of habeas relief.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## ORDER

The opinion filed February 7, 2013, and published at 706 F.3d 1148, is amended as follows:

On slip opinion page 12, line 14 and the last line, change "2003" to "2004."

Judges Lucero and Graber have voted to deny Appellant's petition for panel rehearing, and Judge Kleinfeld has voted to grant it. Judge Graber has voted to deny the petition for rehearing en banc, Judge Lucero makes no recommendation, and Judge Kleinfeld has recommended granting it.

The full court was advised of the petition for rehearing en banc. A judge of the court called for a vote on whether to rehear the matter en banc. A vote was taken, and a majority of the nonrecused active judges failed to vote in favor of en banc rehearing.

Appellant's petition for panel rehearing and petition for rehearing en banc are **DENIED**.

No further petitions for rehearing or petitions for rehearing en banc shall be entertained.

---

O'SCANNLAIN, Circuit Judge, joined by TALLMAN, BYBEE, CALLAHAN, BEA, and IKUTA, Circuit Judges, dissenting from the denial of rehearing en banc:

Faced with a question that has tripped up our circuit more than once in the past—how to interpret a summary decision

of the California Supreme Court on habeas review—the court regrettably disregards explicit guidance from the Supreme Court.[1]  For the reasons aptly expounded by Judge Kleinfeld in his dissent and for the additional reasons set out below, this case should have been reheard en banc.  I respectfully dissent from our unfortunate failure to do so.

## I

To facilitate a discussion about the majority's misapplication of Supreme Court precedent, I set forth only those facts relevant to interpreting the summary decision of the California Supreme Court, excluding the prurient details of the crimes adduced at trial and the facts uncovered during the hearing in federal district court.

Earl Eugene Cannedy Jr. was convicted of three counts of committing lewd and lascivious acts upon his thirteen-year-old stepdaughter and one count of attempting to dissuade her from reporting those acts.  *Cannedy v. Adams*, 706 F.3d 1148, 1151 (9th Cir. 2013).  At his state court trial, his stepdaughter testified that he molested her several times in the winter of 2003, including engaging in one act of digital penetration and one act of oral copulation.  *Id.* at 1151–52.  The prosecution called the stepdaughter's mother, her boyfriend, her best friend, and her best friend's mother to corroborate her story. *Id.* at 1152–53.  In substantial part, these witnesses confirmed that the stepdaughter disclosed the molestation to them and that her account at trial was consistent with these disclosures. *Id.*  The prosecution also introduced evidence that Cannedy

---

[1] *Johnson v. Williams*, 133 S. Ct. 1088, 1091–92 (2013); *Harrington v. Richter*, 131 S. Ct. 770, 780–81 (2011); *Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991).

had molested the stepdaughter's aunt (a minor) who was also staying in his home. *Id.* Cannedy's sister-in-law testified that Cannedy molested her when she came to stay with the family during her high school Christmas vacation. *Id.*; *see also People v. Cannedy*, No. E044512, 2009 WL 477299, at *1 (Cal. Ct. App. Feb. 26, 2009).

The defense theorized that the stepdaughter was fabricating the allegations against Cannedy because she was angry at Cannedy and her mother for planning to sell their home and move away from the city. *Cannedy*, 706 F.3d at 1153. Cannedy was the only defense witness. *Id.* He denied molesting his stepdaughter or his sister-in-law and, indeed, hypothesized that his stepdaughter was lying because she was angry at him for taking the family to Mountain City. *Id.*

After seven days of testimony at trial, the jury convicted Cannedy. *Id.*

Post-conviction, Cannedy hired a new lawyer and moved for a new trial, alleging that his trial counsel was ineffective because he "failed to present witnesses who could have corroborated [his stepdaughter's] motives for accusing [him] of molestation." *Id.* He presented a handwritten statement that he had received from one of his stepdaughter's friends in support of this allegation. *Id.* It stated in relevant part:

> The second week of February, I logged on the internet to talk to my friends. That day, I was talking to [the stepdaughter], and I decided to look at her profile. To my surpize the profile said, "To everyone whos reading this, the rumers that you've heard are wrong. I just wanted to move to my dads because everyone

hates me, and I don't want to put up with it anymore. Everything you've heard isnt true. I just made it up, so I could get away from it all. I'm living at my dads where I have friends, and I am very happy. . . ."

*Id.* at 1153–54 (errors in original). The state trial court denied Cannedy's motion for a new trial. *Id.* at 1154.

Cannedy raised the same claim in a petition for habeas corpus before the California Court of Appeal. *Id.*; *see also People v. Cannedy*, No. E042488, 2007 WL 1683580 (Cal. Ct. App. June 12, 2007). This time, though, in addition to the friend's handwritten statement, he presented the friend's declaration and an email from his trial attorney. *Cannedy*, 706 F.3d at 1154. In the declaration, the friend indicated that she had known the stepdaughter for more than three years, that she saw the message on AOL Instant Messaging ("AIM") when she was chatting with the stepdaughter, and that she "would have testified at [Cannedy's] trial [about the contents of the AIM message] but his trial attorney did not subpoena [her] to testify. . . [or] even talk[] to [her]." *Id.* The email from Cannedy's trial attorney indicated that he had discussed with Cannedy "the strategic pros and cons of calling" several potential witnesses but that the two "agreed that [it] would not be to [their] advantage to call" the witnesses at trial. *Id.* at 1154; *id.* at 1169 (Kleinfeld, J., dissenting). In the email, Cannedy's trial counsel also apparently noted that a previous lawyer had made "frivolous claims" against him about ineffective assistance and asked him to "take the fall" for Cannedy. *Id.* at 1169 (Kleinfeld, J., dissenting).

The California Court of Appeal denied Cannedy's habeas petition. *Cannedy*, No. E042488, 2007 WL 1683580, at

*8–9. The Court rejected Cannedy's argument that "because his counsel did not know of [the friend], his 'investigation was at very best superficial, if that.'"[2] *Id.* at *9. It found instead that his trial counsel's performance was not deficient because "there [was] no allegation that trial counsel knew of the existence of [the friend], the information on the Internet, or the time frame given for the alleged Internet information, and there is no documentary evidence." *Id.* In sum, that court concluded that Cannedy could not "show either deficient representation or prejudice with regards to his . . . claim of ineffective assistance." *Id.*

Cannedy then filed a habeas petition in the California Supreme Court raising the same ineffective assistance of counsel claim. *Cannedy*, 706 F.3d at 1154. In addition to the evidence he had presented to the California Court of Appeal, he added his own declaration. *Id.* It stated in one paragraph that "[p]rior to [his] trial, [he] gave [his] lawyer, Mark Sullivan, names, addresses and phone numbers of all potential witnesses who could give favorable testimony in [his] behalf." *Id.*; *see also id.* at 1169 (Kleinfeld, J., dissenting). In a separate, subsequent paragraph, it stated, "Prior to my trial, I specifically told Mr. Sullivan about [the friend]. I indicated that she could give favorable testimony in my behalf as to a motive for [my stepdaughter] to falsely accuse me of the crimes for which I was charged." *Id.* at 1155

---

[2] Interestingly, Cannedy appeared to argue before the California Court of Appeal that his lawyer was ineffective for not discovering the friend during his investigation. Yet later, after the California Court of Appeal rejected his claims, Cannedy changed tactics and suggested that his trial counsel was ineffective for not interviewing witnesses that Cannedy had already located and identified for him.

(majority opinion); *see also id.* at 1169 (Kleinfeld, J., dissenting).

The California Supreme Court summarily denied Cannedy's petition for habeas corpus without issuing a separate opinion. *Id.* at 1155 (majority opinion).

Cannedy then filed this federal habeas petition in district court raising his ineffective assistance of counsel claim. *Id.* The district court conducted an evidentiary hearing and ultimately granted Cannedy habeas relief. *Id.*; *see also Cannedy v. Adams*, No. ED CV 08-1230-CJC(E), 2009 WL 3711958, at *28–34 (C.D. Cal. Nov. 4, 2009).

Today the court affirms. In my view, the majority rightly concludes that the Supreme Court's decision in *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), precludes it from considering any of the evidence adduced during the hearing in federal district court. *Cannedy*, 706 F.3d at 1156. But then it takes a wrong turn. Invoking the look-through presumption from *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), the majority erroneously holds that the California Court of Appeal's analysis of Cannedy's ineffective assistance claim was unreasonable in light of the new evidence that Cannedy subsequently presented to the California Supreme Court. *Cannedy*, 706 F.3d at 1156–66.

The majority should not have applied the *Ylst* look-through doctrine in this case. The roadmap that the Supreme Court has drawn in its recent habeas decisions points in one direction: the majority should rather have heeded the guidance most recently set forth in *Harrington v. Richter*, 131 S. Ct. 770 (2011), determined whether any argument or theory reasonably could have supported the California

Supreme Court's summary decision, and reversed the grant of habeas relief.

## II

One question lies at the heart of this case: How should we interpret the California Supreme Court's summary decision denying Cannedy's habeas petition when it was presented with new evidence that the California Court of Appeal never had the opportunity to evaluate in its earlier reasoned decision?

In answering this question, the majority assumes that the *Ylst* look-through doctrine categorically applies even where, as here, it has the "odd" effect of requiring the panel to test the validity of one court's reasoning against evidence it never saw. *See Cannedy*, 706 F.3d at 1157–59; *id.* at 1167 (Kleinfeld, J., dissenting). In contrast to its broad interpretation of *Ylst*, the majority's characterization of *Richter* is exceedingly narrow, limiting that case to its facts for application only when there is no reasoned decision by any state court. *See id.* at 1158 (majority opinion).

I am persuaded that the Supreme Court's decisions in *Ylst* and *Richter* were more nuanced than the majority's decision implies. To understand the Supreme Court's instructions in those cases—and, relatedly, to understand how the majority was led astray—a brief overview of the relevant Supreme Court precedent is critical.

## A

The look-through doctrine on which the majority relies originated in the Supreme Court's decision in *Ylst*. *Ylst*,

501 U.S. at 803. In that case, the petitioner challenged the admission of certain testimony by claiming that it was obtained in violation of his *Miranda* rights. *Id.* at 799. On direct appeal, the California Court of Appeal rejected his *Miranda* claim because it had not been raised before the trial court and was thus procedurally barred under California law. *Id.* at 799. The petitioner raised the same claim in his state habeas petition, which the California Supreme Court ultimately denied in a summary order that contained two case citations, but no explanation. *Id.* at 800.

In federal habeas proceedings, the Ninth Circuit ordered grant of the writ, holding that the petitioner's state procedural default did not bar federal review "because the California Supreme Court did not 'clearly and expressly state its reliance on [the petitioner]'s procedural default,' [and thus the federal court] could not say that the Supreme Court's order 'was based on a procedural default rather than on the underlying merits of [the petitioner]'s claims.'" *Id.* at 801.

The Supreme Court reversed. It held that when deciding whether an unexplained order rejected a claim on the merits or dismissed it based on a state law procedural default, courts must begin by looking to the last reasoned state court opinion. *Id.* at 802–03. Indeed, the Court created a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803. Recognizing, however, that the presumption would not "produce a correct assessment of the state-court disposition" in every circumstance, the Court noted that "strong evidence" could rebut it in a different case. *Id.* at 804.

**B**

Ten years later, in *Richter*, the Supreme Court was tasked with interpreting another summary order from the California Supreme Court. After he was convicted of murder, Richter petitioned the California Supreme Court for a writ of habeas corpus, alleging that his trial counsel was ineffective because he failed to present blood evidence at trial. *Richter*, 131 S. Ct. at 783. The California Supreme Court denied Richter's petition in a one-sentence summary order. *Id.*

Reviewing Richter's federal habeas petition, the Ninth Circuit expressed skepticism about whether the deferential standard of review in 28 U.S.C. § 2254(d) should apply to the state court's unexplained order. *Id.* Ultimately, however, the court did not decide the question. *Id.* Instead, it concluded that the California Supreme Court's decision was unreasonable regardless and granted habeas relief on that basis. *Id.*

The Supreme Court reversed. *Id.* at 792. The Court held that a state court decision need not be supported by a statement of reasons to be entitled to deference under § 2254(d). *Id.* at 784. As the Court recognized, "requiring a statement of reasons could undercut state practices designed to preserve the integrity of the case-law tradition" and allowing state courts summarily to dispose of easy cases "enable[s the] state judiciary to concentrate its resources on the cases where opinions are the most needed." *Id.* Thus, the Court created a second presumption applicable to interpreting unexplained state court decisions: "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits" unless the presumption is rebutted with

evidence that "some other explanation for the state court's decision is more likely." *Id.* at 784–85 (citing *Ylst*, 501 U.S. at 803). Applying § 2254(d) deference, the Court went on to conclude that the California Supreme Court's decision was reasonable and that the habeas petition should be denied. *Id.* at 792.

## C

During the same term that the Court decided *Richter*, it handed down another habeas decision in *Pinholster*. Like Richter, Pinholster alleged ineffective assistance of counsel in his California habeas petition and was denied relief in state court. *Pinholster*, 131 S. Ct. at 1396–97. In federal court, however, the Ninth Circuit ordered that habeas relief be granted, concluding that the state court's decision was unreasonable in light of new evidence presented for the first time in federal district court subsequent to the conclusion of state court proceedings. *Id.* at 1397.

The Supreme Court reversed and determined that the reasonableness of state court decisions must be judged based solely on the record that was before the state court adjudicating the claim on the merits. *Id.* at 1398, 1411. The Court rejected the Ninth Circuit's "strange" approach to the case, which required it to "analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 1399. Instead, the Court reiterated that federal habeas review requires federal courts to "focus[] on what a state court knew and did." *Id.* Applying these principles, the Court concluded that the California Supreme Court reasonably rejected Pinholster's ineffective assistance claims. *Id.* at 1410–11.

**D**

Just a few months ago, the Supreme Court added another case to its collection of decisions interpreting the silence of the California courts: *Johnson v. Williams*, 133 S. Ct. 1088 (2013). Williams challenged her conviction in the California courts, arguing that the discharge of a juror for bias after deliberations had begun violated both the California Penal Code and the Sixth Amendment. *Id.* at 1093. The California Court of Appeal issued two opinions rejecting Williams's claim under state law, but never expressly acknowledged her Sixth Amendment argument. *Id.* The California Supreme Court affirmed the final appellate court decision in a one-sentence summary order. *Id.*

The Ninth Circuit granted habeas relief. *Id.* It declined to apply deference under § 2254(d) because "it thought it 'obvious' that the State Court of Appeal had 'overlooked or disregarded' Williams' Sixth Amendment claim." *Id.* at 1094. Thus, it reviewed Williams's Sixth Amendment claim de novo, determined that the dismissal of the juror violated the Constitution, and granted her habeas petition. *Id.*

In a now familiar pattern, the Supreme Court reversed. *Id.* at 1099. It rejected the Ninth Circuit's conclusion that the California courts had overlooked Williams's Sixth Amendment claim. *Id.* at 1094. Noting its holding "follow[ed] logically from [the] decision in [*Richter*]," the Court emphasized that although *Richter* was factually distinguishable—it "concerned a state-court order that did not address *any* of the defendant's claims"—its reasoning applied equally well to the new situation presented in Williams's case where the "state court addressed some but not all of a defendant's claims." *Id.* at 1091, 1094. The Court declined

to interpret the California court's silence as evidence that it overlooked Williams's claim because the realities suggested a more logical explanation for this silence: "[I]t is not the uniform practice of busy state courts to discuss separately every single claim . . . ." *Id.* at 1094. Indeed, the Court gave several reasons why a state court might choose not to acknowledge a federal claim in an opinion even though it had fully considered and rejected it—for example, the state standard might fully incorporate the federal standard or the state court might "regard a claim as too insubstantial to merit discussion." *Id.* at 1095. In short, the Court concluded that, "federal courts have no authority to impose mandatory opinion-writing standards on state courts" and therefore the state court's failure to address a claim should not be viewed as a failure to decide it on the merits. *Id.*

## III

These four Supreme Court decisions yield four principles that should guide the federal courts as we interpret a state court's wholly or partially unexplained decision on habeas review. Had the majority fairly applied them, it would have found a different course appropriate. Specifically, it would have seen the California Supreme Court's silent denial of Cannedy's habeas petition for what it was: an indication that the court found it unnecessary to explain why his petition lacked merit, *not* an indication that it intended to adopt the then-outdated reasoning of the California Court of Appeal.

## A

The first principle is: use common sense. In interpreting the silence of state courts, the Supreme Court consistently invokes that threshold rule. Taking into account the

circumstances surrounding the state court's unexplained decisions, the Supreme Court tells us to adopt the most logical explanation for the state court's actions. *See, e.g.*, *Johnson*, 133 S. Ct. at 1094–95 (refusing to construe the California courts' failure to address expressly a federal claim as evidence that the state courts overlooked that claim because other explanations made more sense in light of the "frequent[]" practice of state courts not "to discuss separately every single claim to which a defendant makes even a passing reference"); *Richter*, 131 S. Ct. at 784–85 (concluding that when a state court denied a habeas claim summarily, the logical presumption was that the state court decided the claim on the merits unless the circumstances led to a contrary conclusion); *Ylst*, 501 U.S. at 804 (holding that the most probable explanation for a silent decision affirming a lower court's opinion is agreement with the reasons given in the lower court's opinion absent evidence contradicting this conclusion).

Common sense is, in essence, the North Star; it sets a fixed reference point for interpreting state court decisions, and the Supreme Court presumptions are meant to be so applied. Nonetheless, here, the majority casts common sense aside.

We know from the Supreme Court's decisions that two alternative explanations have been identified to explain a state court's silent denial of a habeas petition—either (1) the court agreed with the reasoning of the lower court or (2) the court found the petitioner's case so lacking in merit that no opinion was necessary. *Compare Johnson*, 133 S. Ct. at 1094–95, *and Richter*, 131 S. Ct. at 784–85, *with Ylst*, 501 U.S. at 804. The majority assumes that the former explanation applies in this case—that the California Supreme

Court adopted wholesale the reasoning of the California Court of Appeal. But in so doing, the majority implicitly assumes that the California Supreme Court completely ignored the new evidence presented to it and—because it ignored such evidence— gave an "objectively unreasonable" rationale for denying Cannedy's petition for habeas relief. *Cannedy*, 706 F.3d at 1159–62.

This assumption makes little sense in light of the far more plausible alternative explanation for the California Supreme Court's summary denial of Cannedy's habeas petition: like in *Johnson* and *Richter*, the state court considered Cannedy's new evidence, determined that his claim still lacked merit, and found it unnecessary to issue a reasoned opinion because Cannedy failed to make out a prima facie case for relief. *See Johnson*, 133 S. Ct. at 1095. As the Supreme Court has twice emphasized in reversing this circuit, the California courts have "expressly stated that [they have] no obligation to address claims that lack arguable merit." *Id.*; *see also Pinholster*, 131 S. Ct. at 1402 n.12 ("Under California law, the California Supreme Court's summary denial of a habeas petition on the merits reflects that court's determination that the claims made in th[e] petition do not state a prima facie case entitling the petitioner to relief." (internal quotation marks omitted) (alteration in original)).

It makes far more sense to assume that the California Supreme Court adhered to an established practice of summarily denying meritless claims rather than to presume that the court ignored or overlooked new evidence. *See Johnson*, 133 S. Ct. at 1095. Faced with two competing explanations for the California Supreme Court's silence, the majority should have adopted the more sensible of the two, consistent with the Supreme Court's past decisions.

**B**

The second principle is: do not declare a state court's analysis unreasonable based on evidence not before it. *See Pinholster*, 131 S. Ct. at 1399 n.3. That the majority's interpretation of the California court's decision was illogical can be seen in its corollary effect—it forced the majority to run afoul of this second guideline.

Although *Pinholster* dealt specifically with a situation where new evidence was uncovered during an evidentiary hearing in federal court rather than a later proceeding in state court, its reasoning applies with equal force to this case. And here, the majority is engaging in the exact activity that the *Pinholster* decision found nonsensical—it undertook the "strange" task of analyzing "whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 1399. Specifically, it judged the reasoning of the California Court of Appeal against evidence presented for the first time to the California Supreme Court after the court of appeal issued its decision. *See Cannedy*, 706 F.3d at 1159.

The majority asserts that this is a mischaracterization of its reasoning; in actuality it was "reviewing the reasonableness of *the California Supreme Court's decision* by the evidence that *was* before it" because it could assume that the California Supreme Court adopted the court of appeal's reasoning. *Id.* at 1159 n.5 (emphasis in original). But this wrongly presupposes that the look-through presumption applies in this case.

Even in *Ylst*, the Court recognized that in some situations the look-through presumption should not be used because it

"would not produce a correct assessment of the state-court disposition." *Ylst*, 501 U.S. at 804. For one, the Court pointed out that it would be inappropriate to apply the look-through doctrine where "a retroactive change in law had eliminated [the procedural default] ground [relied upon by the lower courts] as a basis of decision." *Id.* It requires only a short leap to conclude that in this case, where a subsequent change in the facts eliminated the bases for the court of appeal's decision, the look-through presumption should have been disregarded in favor of a far more reasonable assessment of the California Supreme Court's ruling. *Id.* This approach satisfies both the rule in *Ylst* and the reasoning in *Pinholster*, ensuring that the two decisions can coexist harmoniously rather than standing in tension.

## C

The third principle is: respect judicial comity. The majority insists that we must assume that the California Supreme Court adopted the reasoning of the California Court of Appeal because "[h]ad the state supreme court intended different reasoning because of the newly added facts, the court could have provided it." *Cannedy*, 706 F.3d at 1159 n.5. This method of interpreting the state court's decision contravenes a mantra of comity that the Supreme Court has repeated in almost every case: federal courts cannot require state courts to write an opinion explaining their state habeas decisions.

As the Court first elucidated in *Coleman v. Thompson*, 501 U.S. 722 (1991), "It remains the duty of the federal courts . . . to determine the scope of the relevant state court decisions." *Id.* at 739. Because federal courts have "no power to tell state courts how they must write their opinions,"

the Court has declined to require that the state courts "us[e] particular language in every case in which a state prisoner presents a federal claim" to avoid an unfavorable presumption in federal court.  *Id.*    Likewise, in *Richter*, the Court emphasized that federal courts cannot "require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" in habeas cases because "requiring a statement of reasons could undercut state practices designed to preserve the integrity of the case-law tradition." *Richter*, 131 S. Ct. at 784–85.  And most recently, in *Johnson*, the Court rejected this court's implicit conclusion that a state court must expressly address each claim presented to ensure that its decision is afforded § 2254(d) deference because "[f]ederal courts have no authority to impose mandatory opinion-writing standards on state courts." *Johnson*, 133 S. Ct. at 1095.

The Court's directions in this regard are clear—we may not explicitly or implicitly require a state court to adopt specific opinion-writing standards.    Nonetheless, that is exactly what the majority purports to do in this case. *Cannedy*, 706 F.3d at 1159 n.5.

**D**

The fourth principle is: give state courts the benefit of the doubt.  The three guidelines already discussed can be grouped under a much broader interpretive principle—deference to the state courts as the sovereigns with "primary responsibility" for addressing a state prisoner's constitutional claims. *Pinholster*, 131 S. Ct. at 1398–99.  As the Supreme Court succinctly explained, under the "highly deferential standard for evaluating state court rulings" found in § 2254(d), "state-court decisions [must] be given the benefit of the doubt." *Id.*

at 1398 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Giving the California Supreme Court the "benefit of the doubt" in this case compels one conclusion—that court's summary denial of Cannedy's habeas petition reflected the court's belief that his claim lacked merit, not that it overlooked new evidence and gave an illogical reason for rejecting his ineffective assistance claim. Thus, the majority erred in limiting its review to the reasons expressly stated in the California Court of Appeal's decision rather than asking more broadly whether any "arguments or theories . . . could have supported[] the state court's decision." *Richter*, 131 S. Ct. at 786.

## IV

If the majority had asked the correct question—whether any argument or theory could have supported the state court's summary denial of Cannedy's ineffective assistance claim—it would have found habeas relief unwarranted.

Many reasonable arguments could have supported the state court's decision to deny habeas relief in this case. For example, it could have concluded that Cannedy's declaration was too vague to support his ineffective assistance claim where it cryptically stated that Cannedy told his lawyer "about" his stepdaughter's friend and that she likely "could give favorable testimony in my behalf as to a motive for [my stepdaughter] to falsely accuse me of the crimes for which I was charged" rather than expressly claiming that he had told his lawyer about the AIM evidence and where to find it. As Judge Kleinfeld so aptly put it:

> Fairminded jurists could have reasonably concluded from the evidence in the California record that Cannedy did not tell his trial lawyer what this case turns on, [the friend's] name, how to find her, and that she would testify that the purported victim had recanted. A lawyer cannot be deemed to have rendered ineffective assistance for failing to discover a witness . . . whose identity, location, or observations he does not know anything about.

*Cannedy*, 706 F.3d at 1169 (Kleinfeld, J., dissenting).

Similarly, the court could have reasonably concluded that the failure to present the friend's testimony was not prejudicial. Fair-minded jurists could conclude that the friend's testimony would not carry enough weight to make it reasonably probable that the result of the proceedings would have been different, particularly in light of the fact that "[j]urors might have been skeptical about whether [the friend] really read what she claimed on the internet, or whether the victim spoke the truth on the internet, or both." *Id.* at 1170.

There is no need to retread this analysis at length. *See id.* at 1168–70. It suffices to say that fair-minded judges could have found several reasons for rejecting Cannedy's habeas petition.

## V

We have traveled down this road many times. As a result of our previous missteps, the Supreme Court has provided us with a roadmap for deciding this case. Regrettably, the

majority ignores its guidance. Quite simply, the majority's opinion fails fairly to apply binding Supreme Court precedent and, as a result, interprets the California Supreme Court's decision in a manner that defies common sense and comity—principles that pervade proper analysis in habeas cases. Thus, I must respectfully dissent from our failure to rehear this case en banc.