UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ANTHONY VINCENTE GUGLIOTTA,

          Petitioner - Appellant,

v.

SILVIA GARCIA,

          Respondent - Appellee.

No. 12-55246

D.C. No. 2:03-cv-09615-SJO-CW
Central District of California,
Los Angeles

ORDER

Before: PREGERSON, NOONAN, and WARDLAW, Circuit Judges.

The petition for panel rehearing is granted. The Memorandum Disposition

filed on July 27, 2015 is withdrawn. A new superseding Memorandum Disposition

and Dissent are being filed concurrently with this Order.

The petition for rehearing en banc is denied as moot. The parties may file

additional petitions for rehearing or rehearing en banc.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTHONY VINCENTE GUGLIOTTA, | No. 12-55246 |
| Petitioner - Appellant, | D.C. No. 2:03-cv-09615-SJO-CW |
| v. | |
| SILVIA GARCIA, | MEMORANDUM[*] |
| Respondent - Appellee. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted December 10, 2014
Pasadena, California

Before: PREGERSON, NOONAN, and WARDLAW, Circuit Judges.

Petitioner Anthony Vincente Gugliotta appeals the district court's denial of

his federal habeas petition. Gugliotta argues that the district court erred by

denying his claim of ineffective assistance of counsel (IAC) because (1) his trial

attorney failed to investigate Gugliotta's mental defects and (2) his IAC claim was

---

[*]   This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

not adjudicated on the merits by the California state courts.  We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a).

We affirm the district court's decision that the California courts adjudicated Gugliotta's claim on the merits.  We reverse the district court's denial of Gugliotta's habeas petition, and we remand with instructions to grant a writ of habeas corpus.

We review de novo the district court's denial of Gugliotta's habeas petition. *Jennings v. Woodford*, 290 F.3d 1006, 1011 (9th Cir. 2002).  Because Gugliotta filed his federal habeas petition after 1996, the Anti-Terrorism and Effective Death Penalty Act (AEDPA) must be considered in this case.[1]  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).

Under AEDPA, when a state court has adjudicated a habeas claim on the

---

[1] We are not convinced by Gugliotta's arguments that AEDPA does not apply to this case.  An examination of the state court records reveals that the California trial court rejected Gugliotta's IAC claim on jurisdictional grounds and, therefore, did not produce a reasoned state court decision that the California Court of Appeal or the California Supreme Court could have relied on. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991), *cert denied*, 134 S.Ct. 1001 (2014); *see also Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended on denial of reh'g en banc*, 733 F.3d 794 (9th Cir. 2013) (discussing the interplay between the holdings in *Harrington v. Richter*, 562 U.S. 86 (2011) and *Ylst*).  We presume, however, that the summary decisions produced by the California Court of Appeal and the California Supreme Court are reasoned and on the merits. *Richter*, 562 U.S. at 99.  Accordingly, AEDPA applies.

merits, we grant relief only when adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We may not grant relief unless the state court came to a decision that was objectively unreasonable. *Williams v Taylor*, 529 U.S. 362, 409-10 (2000).

To bring a successful IAC claim, Gugliotta must demonstrate that his trial counsel's performance was deficient and resulted in prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). We apply "a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, Gugliotta must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 664. "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

Gugliotta alleges that the efforts of his trial counsel, Floyd Silliman,

-3-

constituted deficient performance because of Silliman's failure to investigate Gugliotta's mental defects. *See, e.g., Mickey v. Ayers*, 606 F.3d 1223, 1237 (9th Cir. 2010) (noting counsel cannot ignore "abundant signs" of mental illness or rest solely on a "preliminary examination"). The files of Jon Takasugi, Gugliotta's first attorney, contained medical billing records from shortly after Gugliotta's birth, as well as indications that "Mr. Takasugi had attempted to subpoena additional records from the hospital and was investigating the possible mental defense at the time he declared his conflict and was relieved."

There is no evidence in the record that Silliman continued investigating after replacing Takasugi, despite the fact that Gugliotta's mental health history was readily accessible. Patsy Myers, Gugliotta's re-sentencing attorney, called Gugliotta's father and discovered that Gugliotta has had possible brain damage since birth. Further evidence of Gugliotta's serious mental defects—a skull fracture as a child, a reading level that never reached higher than a third grade level, low IQ scores from school testing, enrollment in a school for the severely emotionally disabled, repetition of multiple grades in school, and failure to graduate from high school—was similarly discoverable through simple investigation.

After trial, forensic psychologist Carl Osborn examined Gugliotta and reviewed his records. Osborn found that Gugliotta's comprehension abilities "hover around the somewhat arbitrary [I.Q.] cutoff score of 70 for mild mental retardation. . . . When combined with the effects of alcohol and cocaine intoxication, serious doubts arise whether [Gugliotta] formed the specific intent necessary for the crimes for which he was convicted."

Despite easy access to all this evidence, Silliman failed to call any witnesses at trial. According to the California Court of Appeal, Silliman "presented no defense." Instead, Dale Rubin, counsel for co-defendant Michael Hearns, argued that the victim, Maria R., was a willing participant in the alleged crimes at issue, including her own rapes. Silliman's closing argument amounted to less than two pages, but was really none at all, given that it simply repeated Rubin's argument that Maria R. lacked credibility. Though Silliman's records were destroyed upon his death, one cannot reasonably imagine anything in those notes that would justify his utter failure to present any defense at all. Sitting by while Rubin put on his defense could not have been a strategic choice, given the strength of a possible mental health defense.

Further, the difference between the numerous and terrible crimes alleged against Hearns, and the limited number of those alleged crimes that pertained to

-5-

Gugliotta, demonstrates that a shared defense made no sense as a strategic choice, but was instead outside the range of reasonable professional assistance. Even Maria R. stated that "[Gugliotta] didn't do anything except be with the wrong person at the wrong time and not try and prevent the crime." There is no reasonable argument or evidence that sitting on the sidelines while Rubin put on a defense for crimes more serious than those Gugliotta was accused of committing was a strategic decision. *Cf. Cullen v. Pinholster*, 131 S. Ct. 1388, 1404-08 (2011).

In sum, Silliman simply ignored the "abundant signs" of Gugliotta's mental defects. Silliman's failures deprived Gugliotta of a fair trial with a reliable result. Any implicit conclusion by the California courts that Silliman rendered effective assistance of counsel is an unreasonable determination of these facts and an unreasonable application of clearly established federal law under *Strickland*.

Given the ample evidence of Gugliotta's mental defects that was never presented to the trial court, Gugliotta has demonstrated a reasonable probability that but for Silliman's unprofessional errors, the result of his trial would have been different. *Strickland*, 466 U.S. at 694. Silliman simply did not perform as an attorney, his cumulative errors prejudiced Gugliotta, and the result in Gugliotta's trial was not reliable. We therefore grant Gugliotta's habeas petition.

**REVERSED** and **REMANDED** with instructions to **GRANT** a writ of habeas corpus.

*Gugliotta v. Garcia*, No. 12-55246

Wardlaw, Circuit Judge, dissenting:

I respectfully and reluctantly dissent. The California Court of Appeal's denial of Gugliotta's claim of ineffective assistance of counsel for failure to present a mental health defense is due "double deference." *See Harrington v. Richter*, 562 U.S. 86, 105 (2011); *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *See generally* Stephen R. Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences*, 113 U. Mich. L. Rev. 1219 (2015). Giving the California courts the deference that is "due" according to the Supreme Court, there are "arguments or theories [that] . . . could have supported" the Court of Appeal's conclusion that either counsel's performance was not deficient or that any deficient performance was not prejudicial. *Harrington*, 562 U.S. at 102. I would therefore affirm the district court's denial of the writ.