**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

AUG 19 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ANTHONY MICHAEL DELAROSA,

Petitioner-Appellant,

v.

JOHN MYRICK, Superintendent Two
Rivers Correctional Institution,

Respondent-Appellee.

No.    20-35058

D.C. No. 2:15-cv-02379-JR

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted March 1, 2021
Portland, Oregon

Before:  PAEZ and WATFORD, Circuit Judges, and TUNHEIM,[**] District Judge.
Dissent by Judge WATFORD

Petitioner Anthony Michael DelaRosa appeals the district court's denial of

his 28 U.S.C. § 2254 habeas petition.  We have jurisdiction under 28 U.S.C.

§§ 1291 and 2253.  Reviewing de novo, *Kipp v. Davis*, 971 F.3d 939, 948 (9th Cir.

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable John R. Tunheim, Chief United States District Judge
for the District of Minnesota, sitting by designation.

2020), we reverse and remand.

DelaRosa argues that the state postconviction court wrongly denied his claim that his trial counsel rendered ineffective assistance by failing to advise him of the accurate terms of the plea agreement. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that an ineffective assistance claim requires establishing (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense"); *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding that *Strickland* "applies to challenges to guilty pleas based on ineffective assistance of counsel"); *see also Missouri v. Frye*, 566 U.S. 134, 145 (2012). Pursuant to AEDPA's strict standard of review,[1] we conclude that the state court's denial of DelaRosa's claim was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

**1.** The first step under AEDPA is to "identify the appropriate state court decision to review." *Kipp*, 971 F.3d at 948. We review the Oregon Circuit Court's ("PCR court") decision denying DelaRosa's postconviction relief petition, as it is the last reasoned decision denying DelaRosa's ineffectiveness claim. *Id.*

**2.** Next, we conclude that the PCR court's decision on the deficient performance prong was an unreasonable application of clearly established law as

---

[1] DelaRosa's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Kipp*, 971 F.3d at 948.

determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); *see Andrews v. Davis*, 944 F.3d 1092, 1107 (9th Cir. 2019) (en banc). The Supreme Court has long held that "criminal defendants require effective counsel during plea negotiations." *Frye*, 566 U.S. at 144; *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill*, 474 U.S. at 58. And it is clearly established that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. There is no doubt that this duty requires defense counsel to accurately communicate such offers to their client. *Id.* at 145–46 (reasoning that the American Bar Association's professional standards recommend counsel "promptly communicate and explain to the defendant all plea offers" (citation omitted)).

DelaRosa's counsel repeatedly advised him that the plea agreement included a term that would allow him to begin his sentence at the Oregon Youth Authority ("OYA"). But the plea offer did not include such a promise—rather, it provided only a *recommendation* that DelaRosa be permitted to start his sentence at OYA, a determination that appears to be within the sole discretion of OYA and the state department of corrections. *See* Or. Rev. Stat. § 137.124(5)(a) (1999). Counsel's failure to accurately advise DelaRosa regarding the "terms and conditions" of the

plea offer constituted deficient performance under *Strickland* and *Frye*.[2] *See Frye*, 566 U.S. at 145. And the PCR court's determination that there was "[n]o inadequacy" was unreasonable, as none of its adopted reasoning was relevant to counsel's performance.[3] *See Cannedy v. Adams*, 706 F.3d 1148, 1159 (9th Cir. 2013) ("The critical inquiry under § 2254(d) is whether . . . it would have been reasonable to reject Petitioner's allegation of deficient performance for any of the reasons expressed by the [state] court of appeal."), *amended by* 733 F.3d 794 (9th Cir. 2013).

Additionally, the PCR court's prejudice determination was contrary to Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000) ("A state-court decision will certainly be contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in

---

[2] The PCR court's finding that the trial judge likely told DelaRosa during the settlement conference that the court had no control over where a prisoner is housed does not affect the section 2254(d)(1) analysis. Nothing in the record suggests that DelaRosa relied on the trial judge's qualification rather than his counsel's advice, and the PCR court made no such finding. Moreover, no part of the written plea agreement or plea hearing put DelaRosa on notice that the term was instead a mere recommendation. *See Frye*, 566 U.S. at 142 (explaining that a plea hearing allows "the defendant's understanding of the plea and its consequences" to be "established on the record" and thus "affords the State substantial protection against later claims that the plea was the result of inadequate advice").

[3] Additionally, the PCR court's failure to consider DelaRosa's detailed testimony that trial counsel advised him that the plea offer's terms would allow him to begin his sentence at OYA led to an unreasonable determination of the facts under section 2254(d)(2). *See Kipp*, 971 F.3d at 953–55 ("[F]ailure to consider key aspects of the record is a defect in the fact-finding process." (citation omitted)).

4

[Supreme Court] cases.") The Supreme Court has established that, when analyzing *Strickland*'s prejudice prong in the plea bargain context, there may be "special circumstances that might support the conclusion" that a petitioner "placed particular emphasis [on a specific issue] in deciding whether or not to plead guilty."[4] *Hill*, 474 U.S. at 60. Under *Hill*, courts must consider whether a petitioner has shown that, because of those "special circumstances," he "would have pleaded not guilty and insisted on going to trial." *Id.*

The PCR court's prejudice determination was contrary to *Hill* because it failed to consider whether DelaRosa would have "insisted on going to trial" due to his "special circumstances," and instead relied solely on DelaRosa's likelihood of success at trial. *Id.*; *see Williams*, 529 U.S. at 405–06. DelaRosa's special circumstance was that he was a minor at the time of the alleged crime and was charged in juvenile court. He testified that he took the plea deal only because it

---

[4] More recently, the Supreme Court explained that a prediction of the likely trial outcome should not be considered at all where "the error is . . . alleged to have affected a defendant's understanding of the consequences of his guilty plea." *Lee v. United States*, 137 S. Ct. 1958, 1967 n.3 (2017) (discussing *Hill*). *Lee* further supports our conclusion, even though it was published after the PCR court's decision. *See Andrews*, 944 F.3d at 1113 n.7 (noting that the Supreme Court has approved of "reliance on Supreme Court opinions issued after [the] state court's decisions where the merits are governed by *Strickland*" (citation omitted)). Nonetheless, even assuming that *Hill* required consideration of both the potential trial outcome and a petitioner's special circumstances, we would still conclude that the PCR court's prejudice determination was contrary to *Hill* under section 2254(d)(1).

included a promise that he would begin his sentence in a juvenile facility. And in return for that promise, DelaRosa waived juvenile court jurisdiction. He testified that if his trial counsel and the judge "had told [him] otherwise, that there would be a chance that [he] would just have to go straight to DOC, [he] would not have taken that deal because [he] wanted to be safe."

Furthermore, as soon as DelaRosa realized the plea agreement did not promise that he would begin his sentence at a juvenile facility, he attempted to withdraw his plea. When the trial judge explained to DelaRosa that the plea agreement was a "better deal" for him, DelaRosa responded, "I don't want it." DelaRosa's status as a minor at the time of the alleged crime was a "special circumstance" that established his "particular emphasis" on whether he would be housed at a juvenile facility in deciding whether to plead guilty. *See Hill*, 474 U.S. at 60. Thus, the PCR court's conclusion that there was "[n]o prejudice" solely because DelaRosa was "[n]ot likely to prevail at trial," was contrary to Supreme Court precedent.[5]

We conclude that "there is a reasonable probability that, but for counsel's

---

[5] The PCR court's failure to acknowledge the significant and highly probative evidence establishing a reasonable probability that DelaRosa would have rejected the plea offer and insisted on going to trial was also an unreasonable determination of the facts under section 2254(d)(2). *See Kipp*, 971 F.3d at 953 (explaining that a court making "factual findings under a misapprehension as to the correct legal standard" is a "legal error [that] infects the fact-finding process" (citation omitted)).

error[], he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59; *see Andrews*, 944 F.3d at 1107 n.4 ("Deference is . . . not required when a state court's decision is 'contrary to' clearly established federal law as determined by the Supreme Court of the United States." (quoting 28 U.S.C. § 2254(d)(1)).

**3.** Finally, a remedy for a Sixth Amendment violation "must 'neutralize the taint' of [the] constitutional violation while at the same time not grant a windfall to the defendant or needlessly squander the considerable resources the State properly invested in the criminal prosecution[.]" *Lafler v. Cooper*, 566 U.S. 156, 170 (2012) (citations omitted). Such a violation may be neutralized "if the state puts [a petitioner] in the same position he would have been in had he received effective counsel[.]" *Nunes v. Mueller*, 350 F.3d 1045, 1057 (9th Cir. 2003) (directing the district court to order the state to release the petitioner unless it offered him "the same material terms that were contained in its original plea offer").

Had DelaRosa received effective counsel, he would have been informed that the plea agreement did not guarantee that he would begin his sentence at the juvenile facility. We therefore remand and instruct the district court to enter a judgment directing the state to provide DelaRosa an opportunity to withdraw his guilty plea. If DelaRosa withdraws his plea, the state may continue to prosecute

7

the case against him.  If he declines, the judgment will remain undisturbed.

**REVERSED AND REMANDED.**

*DelaRosa v. Myrick,* No. 20-35058

WATFORD, Circuit Judge, dissenting:

To prevail on his ineffective assistance of counsel claim, Anthony DelaRosa had to show that he was prejudiced by his lawyer's deficient performance, and to show prejudice he had to prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). DelaRosa asserts that he would have insisted on going to trial had he known that placement with the youth authority was not guaranteed under the terms of his plea deal. The state post-conviction court found this assertion not credible.

Because the state court properly applied the legal standard for ineffective assistance of counsel claims established in *Hill* and *Strickland v. Washington*, 466 U.S. 688 (1984), we can grant relief here only if the state court's factual finding "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). I don't think we can say that on the record before us.

The state court permissibly found that, during the settlement conference leading up to the guilty plea, the trial judge advised DelaRosa that he could recommend but not guarantee placement with the youth authority. The state court based this finding on the trial judge's deposition testimony, during which, after

acknowledging that he could not remember specifically what was said during the settlement conference, the judge stated: "But I tell every defendant in every settlement conference, of which I do hundreds, if not thousands, that I have no control over where they serve their time, that that is a DOC/OYA decision and I can't order them to do anything. . . . I often make recommendations to DOC, where they serve their time. But I always am very explicit that I have no control over where they serve their time." The state court found that the trial judge followed his usual practice in DelaRosa's case, a finding that rests on a reasonable inferential leap from the judge's testimony. As construed by the state court, the judge's deposition testimony negates any claim by DelaRosa that he pleaded guilty under the mistaken impression that placement with the youth authority was guaranteed.

In rejecting DelaRosa's claim, the state court also relied on the favorable terms of the plea deal and the low odds DelaRosa faced at trial. If DelaRosa had insisted on going to trial and been convicted, he would have received a mandatory-minimum sentence of 90 months in adult prison, with no possibility of being placed with the youth authority. Under the terms of the plea deal, however, he received a 60-month sentence and remained eligible to serve his sentence in a youth facility, a placement the government agreed to recommend. These were favorable terms for DelaRosa because, as the state court observed, "[i]t was an incredibly strong case for the State and a very weak case for the defense."

DelaRosa was accused of assaulting an individual at a light-rail train station, and the events in question were captured on a security videotape. DelaRosa's prospects for acquittal at trial were thus quite low.

Based on this record, the state court found DelaRosa's claim that he would have insisted on going to trial "not credible because there is no doubt that he would have been convicted of the charges and faced a far longer sentence in adult prison if he had gone to trial." That finding is reasonable and forecloses relief on DelaRosa's ineffective assistance of counsel claim. I would therefore affirm the district court's judgment denying the petition for writ of habeas corpus.